UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80426-CIV-MARRA

In re:
NORMAN L. DESMARAIS

Debtor.
_____/

**OPINION AND ORDER**

This cause is before the Court on the appeal by Norman Desmarais ("Appellant") of the orders of the bankruptcy court entering summary judgment in favor of Jhelum Enterprises, LLC ("Jhelum") and Andre Gibson ("Gibson") (collectively, "Appellees") (DE 1) and Appellees' Motion for Sanctions (DE 15). The Court has carefully considered the appeal, the motion, the briefs of the parties, the entire record on appeal, and is otherwise fully advised in the premises.

**APPEAL OF SUMMARY JUDGMENT ORDER**

I. Background

The facts, based upon the parties' respective statement of facts in their appellate briefs and the appellate record, are as follows:

Jhelum and Oceanside Automotive Service and Towing, LLC ("Oceanside") were at one time engaged in a landlord-tenant relationship. In 2010, Oceanside brought suit against Jhelum in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("the state court litigation"). In the course of the state court litigation, Jhelum filed a counterclaim against Oceanside, which sought damages for unpaid rents. At the conclusion of the state court litigation, Jhelum received a final judgment against Oceanside for unpaid rents and costs totaling $37,163.89 and attorneys' fees in the amount of $17,700.00. These two judgments will

hereinafter be referred to collectively as the "judgments against Oceanside."

Sometime shortly before Jhelum obtained the judgments against Oceanside, Appellant, as the sole officer of Oceanside, transferred the assets of Oceanside to himself. Upon learning of the transfer of Oceanside's assets, Jhelum impleaded Appellant in the state court litigation and filed a motion for supplementary proceedings seeking to establish that Appellant was a fraudulent transferee of the assets of Oceanside. On April 27, 2011, Jhelum received a final judgment on supplementary proceedings ("the state court judgment against Appellant"). In the state court judgment against Appellant, the state court held that Appellant was both the cause of the fraudulent transfer, pursuant to Florida Statute § 726.105(1)(a), and the recipient of the transfer. In so holding, the state court found that Appellant acted with the "actual intent to hinder, delay, or defraud [Jhelum] as judgment creditor." As a result, the state court held Appellant and Oceanside to be jointly and severally liable to the Plaintiff in the amount of $54,863.89. This amount represented the balance of the judgments against Oceanside for unpaid rents, costs, and attorneys' fees, plus interest.

Appellant filed a voluntary Chapter 7 bankruptcy petition on June 16, 2011. On June 27, 2011, Jhelum filed an adversary complaint, seeking a determination that the debt owed by the Appellant to Jhelum is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The bankruptcy court held that the prior state court judgment against Appellant established all of the elements of 11 U.S.C. § 523(a)(6) except for malice. The bankruptcy court then directed Appellant and Jhelum to submit supplemental briefs addressing the malice element in the context of whether the Court should grant either party summary judgment.

In rendering summary judgment, the bankruptcy court focused its inquiry on the "just

cause" portion of the legal definition of malice. The bankruptcy court concluded that the state court findings had already established the wrongfulness aspect of malice as a matter of law. The bankruptcy court observed that in order to find that an act was done with "just cause," there must be an "extraordinary" reason for committing the act. Next, the bankruptcy court stated that Appellant failed to point to any evidence that he had just cause for transferring Oceanside's assets to himself. Specifically, the bankruptcy court found that while Appellant claimed that he transferred the assets to start a new business, that reason does not constitute just cause. As such, the bankruptcy court concluded that Appellant did not have "just cause" for fraudulently transferring the assets and therefore committed a malicious injury.

Appellant makes the following arguments on appeal: (1) Florida fraudulent transfer statutes are remedial and are not independent causes of action, therefore Jhelum's claims are contractual and a discharge cannot be sustained under section 523(a)(6) and (2) Florida fraudulent transfer statutes do not include the element of malice.

 II. Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992). An appellate court may affirm the lower court "where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected" by the lower court. Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992).

III. Discussion

The United States Court of Appeals for the Eleventh Circuit, in In re Jennings, recently addressed fraudulent transfers in the context of section 523(a)(6) of the Bankruptcy Code. In re Jennings, 670 F.3d 1329 (11th Cir. 2012). Jennings addressed whether a fraudulent transfer of property by a co-conspirator constituted a willful and malicious injury under section 523(a)(6). The facts concerned a creditor who was paralyzed after being shot by the accidental discharge of a handgun. The creditor initiated a personal injury claim in California state court against the manufacturer and distributor of the handgun, as well as the controlling owner of those companies. During the personal injury case, the owner of the handgun companies directed the debtor, one of the owner's former wives, to transfer ownership of a property to one of the owner's other former wives. Once the creditor learned of this transfer, he filed a California state court complaint alleging, among other causes of actions, fraudulent transfer against the debtor and an investment company that the debtor and the owner created and controlled. Eventually, a jury found the handgun companies and the owner of the companies liable for the creditor's personal injury and awarded damages; no determination was made against the debtor or the other entities. Id. at 1330. The day after the verdict, the debtor, the other former wife, the owner and his companies filed a bankruptcy case. After the bankruptcy proceeding was initiated, the state court cases were transferred to the bankruptcy court. The bankruptcy later court found there had been a fraudulent transfer. Id. at 1331.

The Jennings Court found that because the creditor had obtained a fraudulent transfer judgment, including a finding that the debtor intended to prevent the creditor from satisfying the creditor's personal injury claim, the debtor's transfer was an injury to the creditor's property.

Additionally, the <u>Jennings</u> court held that the debtor transferred the property willfully and with malice because the debtor knew that the transfer was meant to keep the property out of the creditor's reach and was also aware of the creditor's personal injury claim. Hence, there was no error in finding that the fraudulent transfer judgment was not excepted from the discharge. <u>Id.</u> at 1334.

Here, the facts are remarkably similar to <u>Jennings</u>. Jhelum, like the creditor in <u>Jennings</u>, had a legal right to payment. Appellant's transfer of assets beyond Jhelum's reach deprived Jhelum of his right to payment on the claim. In <u>Jennings</u>, the debtor acted willfully. In the instant case, the bankruptcy court found, based on the findings of the state court, that the transfer of these asserts was willful. Finally, as in <u>Jennings</u>, the bankruptcy court found that Appellants had no just cause to transfer the assets.

Significantly, Appellant recognizes that "this Court is bound by the recent ruling" of <u>Jennings</u>" and states that he is merely making "his arguments . . . to preserve same for consideration by the Circuit." (Initial Br. at 4 n.4; Reply at 4.) Appellant also states that he believes <u>Jennings</u> can be distinguished on its facts and the applicable law of California. (<u>Id.</u>) Appellant argues that <u>Jennings</u> can be distinguished from this case because in <u>Jennings</u> the creditor sued for fraudulent transfer in California state court, whereas here the creditor sued for fraudulent transfer in Florida state court. Because the elements for fraudulent transfer are identical in Florida and California, the Court rejects this argument. <u>Compare</u> Cal. Civ. Code § 3439.04 <u>with</u> Florida Statute § 726.105.

Next, the Court addresses Appellant's argument that Florida's fraudulent transfer statute is not an independent cause of action, but is merely remedial. Thus, Appellant asserts that

5

Appellees have nothing more than a debt arising from a breach of contract, and debts arising from such claims are not excepted from discharge.  The Court rejects Appellant's characterization of Appellees' claim as merely arising from a breach of contract.  While Appellees' claim originally arose out of contract, by virtue of Appellant's wrongful conduct, it ripened into a judgment for fraudulent transfer.  It is the fraudulent transfer judgment which is the basis for the exception to discharge under section 523(a)(6).  Appellant once again attempts to distinguish Jennings by noting that the underlying cause of action in that case was for personal injury.  The Court rejects this distinction as having any significance.  The issue in Jennings, as here, was whether the fraudulent transfer claim is exempt from discharge.  The Jennings case does not turn on the nature of the creditor's underlying claim.[1]  See Jennings, 670 F.3d at 1334 ("because [the creditor] obtained a fraudulent transfer judgment, complete with a finding that [the debtor] intended to prevent [the creditor] from satisfying his personal injury claim, we conclude that [the debtor's] transfer was an injury to [the creditor's] property.")  Because this Court must follow the binding precedent of Jennings, the Court rejects this argument by Appellant.[2]

     Likewise, the Court rejects Appellant's challenge to the bankruptcy court's factual

---

    [1] Likewise, this case is similar to In re Bammer, relied upon by Jennings.  The debtor in Bammer sought to avoid an order of restitution by engaging in fraudulent transfers.  It was the finding of actual intent to injure the Bammer creditor's right to restitution, in conjunction with the  fraudulent transfer judgment, that laid the foundation for the exception to discharge. Id. (citing Bammer, 131 F.3d 788, 790-93 (9th Cir. 1997)).

    [2] Appellant attaches the November 29, 2007 order, In re Ernest W. Willis, case no. 07-11010-BKC-PGH, as support for this argument. (November 29, 2007 Order, Ex. A, DE 9.)  That order pre-dates Jennings, and does not address fraudulent transfers. The Court finds this case inapplicable.

finding that he did not act with just cause. The Court finds there was sufficient evidence for the bankruptcy court to conclude that Appellant had no just cause to effectuate the transfer and the transfer was made with malice. See In re Smith, No. EC–009–1117–MkMoJu, 2009 WL 7809005, at * 7 (9th Cir. BAP Dec. 17, 2009) (citing In re Bammer, 131 F.3d at 792) ("where the debtor intentionally committed fraud in an attempt to facilitate his mother's felonious embezzlement scheme, his subjective intent to act out of compassion for his mother, and not to personally receive any monetary benefit from the fraud, did not constitute just cause."); In re Sicroff, 401 F.3d 1101, 1107 (9th Cir. 2005) (libel claim against graduate student by professor was nondischargeable and there was no just cause where graduate student demonstrated specific intent to injury professor's professional reputation).

For the foregoing reasons, the Court finds that the Bankruptcy Court did not err in entering summary judgment in favor of Appellees.

**MOTION FOR SANCTIONS**

Appellees move for sanctions pursuant to Federal Rules of Bankruptcy Procedure 8020 on the following bases: (1) the arguments presented by Appellant are unsupported by fact and law; (2) the caselaw presented by Appellant is inapplicable to the fraudulent transfer judgment and (3) the precedent relied upon by Appellant is against his position. Appellant responds that the Jennings case is distinguishable and contrary to Florida law and United States Supreme Court precedent.

Federal Rules of Bankruptcy Procedure 8020 reads as follows:

If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to

7

respond, award just damages and single or double costs to the appellee.

Fed. R. Bankr. P. 8020.

"Because the language of Rule 8020 is similar to Federal Rule of Appellate Procedure 38, courts apply cases interpreting Rule 38 in determining whether to grant sanctions under Rule 8020." Steffen v. Berman, No. 8:09–cv–1953, 2010 WL 2293235, at *1 (M.D. Fla. June 7, 2010) (citing advisory committee note to federal bankruptcy rule 8020). "Rule 38 sanctions have been imposed against appellants who raise 'clearly frivolous claims' in the face of established law and clear facts." Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenerette ACLI Futures, Inc., 853 F.2d 834, 841 (11th Cir.1988) (citation omitted). "For purposes of Rule 38 sanctions, a claim is frivolous if it is 'utterly devoid of merit.'" Nettles, Jr. v. City of Leesburg Police Dept., 415 F. App'x 116, 123 (11th Cir. 2010) (quoting Bonfiglio v. Nugent, 986 F.2d 1391, 1393 (11th Cir.1993)).  "Courts consider a variety of factors in deciding whether to impose sanctions under Rule 8020," including "bad faith on the part of the appellant; that the argument presented on appeal is meritless *in toto*; and, whether only part of the argument is frivolous. In addition, [ ] court[s] will consider whether the appellant's argument: addresses the issues on appeal properly; fails to support the issues on appeal; fails to cite any authority; cites inapplicable authority; makes unsubstantiated factual assertions; makes bare legal conclusions; or, misrepresents the record." In re Maloni, 282 B.R. 727, 734 (1st Cir. BAP 2002); see In re Sokolik, 635 F.3d 261, 271 n.4 (7th Cir. 2011).

After careful review, the Court will not sanction Appellant. While many of Appellant's arguments were inartfully framed, Appellant's claim that the bankruptcy court erred in finding that he did not act with just cause was a legitimate issue to pursue.  That finding was based on

the record developed in this case, and was not controlled by any prior precedent.  Appellant had a good faith basis to seek appellate review of that factual determination which was on a central issue.  To hold otherwise would impose a chilling effect on any losing party seeking appellate review of an adverse factual determination by a lower court.   The Court also notes that, as to the application of the <u>Jennings</u> decision to the facts of this case, Appellant acknowledged that it was binding precedent, but he was preserving his arguments for further review by the Eleventh Circuit Court of Appeals.[3]

For these reasons, the Court denies the motion for sanctions.

IV.  <u>Conclusion</u>

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decision on appeal of the bankruptcy court is **AFFIRMED** and  Appellees' Motion for Sanctions (DE 15) is **DENIED.**

This case is **CLOSED** and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of August, 2012.

_____
KENNETH A. MARRA
United States District Judge

---

[3] The Court recognizes that section 158 of the Title 28 of the United States Code permits for direct review of bankruptcy court judgments, orders, or decrees by the applicable court of appeals in cases where the bankruptcy court or the district court certify that there is no controlling decision from the Supreme Court or circuit court, the case involves a matter of public importance, there are conflicting precedents, or an immediate appeal may materially advance the progress of the bankruptcy proceeding.  28 U.S.C. § 158(d)(2)(A)(i)-(iii).  This case does not meet any of those standards.